IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 05-0233-WS |
| | ) | |
| **FREDERICK D. GRAVES,** | ) | CIVIL NO. 06-0178-WS-B |
| | ) | |
| Petitioner. | ) | |

**ORDER**

This matter is before the Court on petitioner Frederick D. Graves' Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 25) pursuant to 28 U.S.C. § 2255. The Motion has been briefed and is ripe for disposition at this time.

**I.     Background.**

On April 19, 2005, Senior District Judge Butler sentenced petitioner Frederick D. Graves to a term of 172 months imprisonment after Graves pleaded guilty in this District Court to one count of possessing with intent to distribute approximately 70 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  *See* Criminal No. 04-00104-CB.  That offense is not the subject of the instant § 2255 petition; however, on July 16, 2005, after Graves had been taken into custody as a federal prisoner on that sentence and while he was awaiting designation to a federal correctional institution, Graves escaped from the Escambia County Detention Center in Brewton, Alabama.  Within days, he was recaptured.  An Indictment (doc. 3) followed, charging Graves with escape from an institutional facility in which he was lawfully confined at the direction of the U.S. Attorney General by virtue of a judgment and commitment of this District Court, in violation of 18 U.S.C. § 751(a).  K. Lyn Hillman, Esq., of the Federal Defenders Organization was appointed to represent Graves in connection with the escape charge.

On September 13, 2005, Graves pleaded guilty to the escape charge before the undersigned.  After being placed under oath at the change of plea hearing, Graves answered affirmatively when asked whether he had read the plea document, discussed it with his attorney, understood its contents, and agreed with its terms, conditions and information.  (Guilty Plea

Transcript (doc. 35), at 8.)[1]  Graves further answered affirmatively when asked whether he and Hillman had talked about how the U.S. Sentencing Guidelines might affect his case.  (*Id.* at 11-12.)  Graves also indicated during the guilty plea colloquy that he understood that "any notice of appeal must be filed within ten days of judgment being entered in [his] case."  (*Id.* at 13-14.)  In response to additional questioning from the Court, Graves stated that he was pleading guilty of his own free will because he was, in fact, guilty of escape.  (*Id.* at 20.)  The Court accepted Graves' guilty plea.  Three months later, on December 15, 2005, the undersigned sentenced Graves to a term of imprisonment of 37 months on the escape charge, to be served consecutively to the 172-month sentence imposed by Judge Butler on the underlying narcotics conviction.  (Doc. 22.)

   Graves did not pursue a direct appeal in this case; however, on March 24, 2006, he filed a petition collaterally attacking his conviction and sentence pursuant to 28 U.S.C. § 2255, in which he identified the following three grounds for relief: (1) a claim that his appointed attorney (Hillman) refused his request that she file a direct appeal on his behalf, in violation of his Sixth Amendment right to effective assistance of counsel; (2) a claim that Hillman rendered constitutionally ineffective assistance of counsel by refusing to go over the plea agreement with him, or to visit him and respond to his letters after he pleaded guilty; and (3) a claim that the three-point career criminal enhancement to his base offense level at sentencing was in violation of the Sixth Amendment because the enhancement was neither stated in the Indictment nor found by a jury beyond a reasonable doubt.  (Doc. 25, at 4-5.)  Graves has not filed a memorandum in support of this § 2255 petition; therefore, the Court's evaluation is necessarily limited to Graves' abbreviated description of his grounds for relief in the petition itself.

---

   [1] The use of the term "plea document" rather than "plea agreement" here is intentional.  There was no formal plea agreement in this case; however, on the date of his guilty plea hearing, Graves and his counsel, Hillman, signed a document styled "Defendant's Plea Document" (doc. 15) that lists the elements of the escape offense, recites the maximum statutory punishment, and includes a six-sentence statement entitled "Factual Basis for the Plea" and stating that Graves had knowingly walked out of the Escambia County Jail after having been sentenced to a term of imprisonment, being remanded to the custody of the Bureau of Prisons, and while awaiting designation to a federal facility.  This "Plea Document" was apparently prepared by Hillman and was not executed by the Government.

**II.     Legal Standard.**

Collateral relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted."  456 U.S. at 164.  Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited.  *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).  Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack.  A petitioner can, however, overcome his procedural default of claims not raised on direct appeal.  The burden a petitioner must meet differs, depending upon the type of claim raised.  First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted).  A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent.  Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990).  Jurisdictional issues are not subject to procedural default because federal courts have limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking.  *Harris v. United States*, 149 F.3d 1304, 1307 (11th Cir. 1998).

One way a petitioner may overcome a procedural default is by demonstrating that the default was attributable to constitutionally ineffective performance by trial or appellate counsel.  *Cross*, 893 F.2d at 1290.  To establish ineffective assistance of counsel:

> "... a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency.  A petitioner must overcome a strong

>   presumption of competence, and the court must give significant deference to the attorney's decisions."

*Hagins v. United States*, 267 F.3d 1202, 1204-05 (11th Cir. 2001) (internal citations omitted); *see also Cross*, 893 F.2d at 1290.  Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases."  *Cross*, 893 F.2d at 1290.[2]  Meanwhile, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently."  *Id.*[3]

"Conclusory allegations of ineffective assistance are insufficient."  *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted).  Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

>   "When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioners' to bear, is and is supposed to be a heavy one.  And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately.  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); *see also Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) ("There is a strong

---

[2] Petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms."  *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000).

[3] A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."  *Gallo-Chamorro*, 233 F.3d at 1303-04.  A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Cross*, 893 F.2d at 1292 (citation omitted).

presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy.").

### III. Analysis.

#### A. *Ineffective Assistance: Alleged Refusal to File an Appeal.*

Graves' first ground for § 2255 relief is his contention that his counsel disregarded his instructions to file a direct appeal on his behalf. In particular, Graves states in his petition that "I asked my lawyer to file an appeal and she refused to do so." (Doc. 25, at 4.) Elsewhere in the petition, Graves states, "I informed my attorney to file an appeal and she did not honor my request." (*Id.* at 3.)

This Circuit hews to "the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se*." *Thompson v. United States*, --- F.3d ----, 2007 WL 3033152, *1 (11th Cir. Oct. 18, 2007) (citing *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005)); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). In addition to constituting constitutionally deficient performance, as a matter of law, it is clear that "to satisfy the prejudice prong of the *Strickland* test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." *Gomez-Diaz*, 433 F.3d at 792.

In attempt to overcome *Flores-Ortega* and its progeny, the Government submits as Exhibit A a detailed affidavit from Hillman in which she disputes Graves' allegation that he asked her to file an appeal. But the Hillman Affidavit does nothing more than create questions of fact which must be resolved via evidentiary hearing. *See Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (habeas petitioner is entitled to an evidentiary hearing if he alleges facts that, if proven, would entitle him to relief); *Gaston v. United States*, 2007 WL 1695762, *2 (11th Cir. June 13, 2007) (vacating district court order denying § 2255 relief and instructing district court to hold evidentiary hearing to determine whether petitioner had asked counsel to file a notice of appeal); *Rosero v. United States*, 2006 WL 2613661, *3-4 (11th Cir. Sept. 12, 2006) (remanding § 2255 action for district court to conduct evidentiary hearing into whether petitioner

in fact requested counsel to file direct appeal, triggering *per se* duty to appeal under *Flores-Ortega*). To choose between a petitioner's allegations and an attorney affidavit to the contrary without a hearing would be to court error. *See Bolton v. United States*, 2007 WL 906419, *2-3 (11th Cir. Mar. 27, 2007) (vacating district court denial of § 2255 petition where lower court credited counsel's affidavit over petitioner's, and explaining that on remand "the district court must conduct an evidentiary hearing to find the facts concerning the failure of trial counsel to file a notice of appeal, and based on those findings decide whether to grant the § 2255 motion").

Graves claims that he told Hillman to file a notice of appeal on his behalf. Hillman denies it. In light of this conflicting evidence, Graves may obtain an evidentiary hearing to determine whether he is entitled to relief on this ground. Several words of caution are in order, however. If Graves is ultimately granted relief on this claim, the remedy would be not the immediate vacatur of his conviction and sentence, but rather an opportunity to file an out-of-time appeal to the Eleventh Circuit Court of Appeals. *See Montemoino v. United States*, 68 F.3d 416, 417-18 (11th Cir. 1995) (holding that where a defendant pleads guilty and counsel fails to file a notice of appeal despite defendant's request to do so, the defendant is entitled to an out-of-time appeal). Graves has identified no potentially meritorious issues for direct appeal relating to the escape conviction and sentence, and Hillman states in her affidavit that in her view he had "no meritorious issues for appeal." (Doc. 38, Exh. A, ¶ 3.) Furthermore, attending an evidentiary hearing would almost certainly visit certain burdens and disruption upon petitioner.[4] If Graves nevertheless desires an evidentiary hearing on the question of whether he in fact requested that Hillman file a direct appeal on his behalf, he is **ordered** to file, on or before **November 30, 2007**, a statement to that effect, failing which the Court will deny this ground for relief without a hearing as having been abandoned.

---

[4] Among any other relevant considerations, holding an evidentiary hearing would remove Graves from his current place of incarceration with no guarantees of return to that facility, much less his present cell; would interrupt his participation in any drug treatment or other rehabilitation programs in which he may be enrolled, completion of which may be required to obtain a reduction in his sentence; and would require interim housing at any of a number of various local jail facilities for an indeterminate time period pending reassignment by the Bureau of Prisons.

> B.   **Ineffective Assistance: Alleged Failure to Go Over Guilty Plea or to Contact Petitioner following Guilty Plea.**

Graves' second ground for § 2255 relief is his contention that he received ineffective assistance of counsel in connection with his guilty plea and sentencing because of a lack of communication from Hillman. In particular, Graves alleges that Hillman "refused to go over my plea agreement with me. After I plead guilty she would not come see me nor respond to my letter." (Doc. 25, at 4.)

With regard to Graves' contention that Hillman refused to go over his plea agreement with him, there was no formal plea agreement in this case. Rather, Graves signed only a unilateral, two-page Plea Document prepared by his lawyer that stated the elements of the offense, the maximum statutory punishment, and the factual basis for the plea. To the extent that Graves now complains that Hillman failed to review the Plea Document with him, this statement directly contradicts Graves' sworn statements at his guilty plea hearing, wherein Graves answered affirmatively when asked by this Court whether it was true that, by signing the Plea Document, he was acknowledging that he had read it, that he had discussed it with Hillman, that he understood its contents, and that he agreed with its terms, conditions and information. (Guilty Plea Hearing Transcript (doc. 35), at 8.) Graves is bound by these averments. Indeed, the Supreme Court has cautioned lower courts to view attempts to subvert in-court statements as to the knowing and voluntary nature of a guilty plea with a jaundiced eye, reasoning that:

> "the representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."

*Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (explaining that the various advantages of the plea bargaining system "can be secured ... only if dispositions by guilty plea are accorded a great measure of finality"); *see generally United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994) ("the record of a Rule 11 proceeding is entitled to a 'presumption of verity,' and [the] answers contained therein are binding"); *Cunningham v. Diesslin*, 92 F.3d 1054, 1060-62 (10th Cir. 1996) (habeas petitioner's claim that he relied upon counsel's promise that he would only serve half his sentence was undermined by petitioner's statements in open court, which carry a strong presumption of verity); *United States v.*

-7-

*Marrero-Rivera*, 124 F.3d 342, 349 (1st Cir. 1997) (rejecting petitioner's claims that counsel pressured him to plead guilty, where such claims contradicted sworn responses in Rule 11 hearing, as "it is the policy of the law to hold litigants to their assurances"); *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999) (where a defendant is given several in-court opportunities to reveal improper representations by attorney regarding sentence and fails to do so, that failure overrides later claims that he would not have pleaded guilty but for flawed advice).

Graves has offered no evidentiary basis for overcoming the strong presumption of verity accorded to his representations under oath during the change of plea hearing that Hillman had in fact discussed the Plea Document with him; therefore, he cannot be heard to complain otherwise now, absent an extraordinary showing that he has not made. Besides, Graves has neither argued nor demonstrated that had Hillman reviewed the Plea Document with him in greater detail, he would not have pleaded guilty. This omission is fatal to the claim. *See Jackson v. United States*, 976 F.2d 679, 681 (11th Cir. 1992) ("To establish a claim of ineffective assistance in a guilty plea situation, [defendant] must show that but for counsel's errors, he would not have pled guilty.").

As for Graves' more general expression of dissatisfaction that Hillman was not as responsive to his correspondence and requests for jail visits as he might have wished, the Sixth Amendment does not guarantee Graves the right to an attorney who is constantly at his beck and call, and who will come see him at the jail to talk about his case any time he wishes.[5] *See generally Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000) (in examining

---

[5] It is uncontroverted that there was at least some flow of ongoing communication between Graves and Hillman during the 90-day period between his guilty plea and sentencing hearing. Hillman obtained a psychological evaluation for Graves on November 25, 2005 to explain the reasons for his escape, and utilized that evaluation at the sentencing hearing to argue for a sentence below the low end of the Sentencing Guidelines. (Doc. 20.) Hillman also wrote Graves a letter dated October 5, 2005 explaining the status of the representation and the work that she was performing to prepare his case for sentencing. (Hillman Aff., at Exh. 2.) Graves responded to Hillman's October 5 letter with one of his own, stating that her letter "was of great value to [him]" and identifying no follow-up inquiries. (*Id.*, at Exh. 3.) And it is undisputed that Hillman visited Graves following his guilty plea in connection with the interview for his presentence report. (*Id.*, ¶ 9 & Exh. 4.) As these examples illustrate, Graves' objection is not that Hillman never contacted him before sentencing (she clearly did), but is simply that she did not devote as much time to communicating with Graves as he would have liked.

ineffective assistance claims, "courts must recognize that counsel does not enjoy the benefit of unlimited time and resources"). Nor has Graves argued, much less shown, that Hillman's alleged failure to visit him or to respond to his letters with the desired frequency, detail or promptness in any way prejudiced him with regard to his sentencing. He does not identify what issues he wished to discuss with her, much less how Hillman's failure to visit or write to him with the desired frequency prejudiced him in any way. For all of these reasons, it is the opinion of the undersigned that, with respect to the second ground for relief, Graves' conclusory statements of lack of communication are insufficient as a matter of law to show that Hillman's level of communication fell below the wide range of professional competence for criminal defense attorneys, much less that her omissions in failing to meet with him and send him letters as often as he would have liked worked some prejudice on the defense. Because it flunks both prongs of the *Strickland* test, this ground for relief under § 2255 is without merit.[6]

### C.     Career Offender Enhancement.

As his third ground for § 2255 relief, Graves complains that he received a three-level

---

[6] Federal courts have consistently given short shrift to these sorts of claims of ineffective assistance of counsel. *See, e.g., Dick v. Scroggy*, 882 F.2d 192, 197 (6th Cir. 1989) (no prejudice where defendant's counsel failed to interview defendant until night before trial, and then only for 30-45 minutes, where there was no showing that the defense was prejudiced); *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988) (rejecting ineffective assistance claim alleging inadequate pre-trial contact where defendant failed to prove prejudice resulting from counsel's failure to have more frequent contact with him); *Villot v. Varner*, 465 F. Supp.2d 439, 447 (E.D. Pa. 2006) (denying ineffective assistance claim alleging failure to communicate, where defendant showed neither that counsel's level of communication fell below objective level of reasonableness nor any resulting prejudice); *Wolfe v. Grams*, 2007 WL 1655457, *4 (E.D. Wis. June 7, 2007) (dismissing habeas claim predicated on ineffective assistance for failure of counsel to visit defendant in jail, where defendant failed to demonstrate one piece of information he would have imparted to counsel during more frequent consultations or that counsel was uninformed about defendant's version of the offense and other relevant circumstances); *Ashman v. Crosby*, 2006 WL 163077, *11 (M.D. Fla. Jan. 20, 2006) (rejecting ineffective assistance claim predicated on counsel's failure to visit defendant in jail pending sentencing, where "there is no showing whatsoever that further discussions between Petitioner and his attorney ... would have changed the result of the sentencing proceeding"); *United States v. Mers*, 2005 WL 3454665, *12 (W.D. Mich. Dec. 16, 2005) ("Regardless of whether counsel responded to Defendant's communications, Defendant cannot demonstrate ineffective assistance of counsel [because] Defendant makes no effort to demonstrate how counsel's failure to reply to Defendant's letters resulted in the necessary prejudice required under the *Strickland* standard.").

enhancement for career offender status even though the career offender issue was neither charged in the Indictment nor found by a jury beyond a reasonable doubt. This sounds like an argument under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), wherein the Supreme Court reaffirmed the general principle that, under a mandatory Guidelines scheme, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 244.

There are two fundamental problems with Graves' argument.[7] First, the sentencing transcript in this case makes clear that the undersigned applied the Sentencing Guidelines as advisory, not mandatory. For example, on page 11 of that transcript (doc. 36), the Court stated, "The Court further finds that the advisory guideline range is appropriate to the facts and circumstances of this case ...." (*Id.*) It is very clear that "[w]hen a district court applies the guidelines in an advisory manner, nothing in *United States v. Booker* ... prohibits the district court from imposing guidelines enhancements based on facts found by the judge by a preponderance of the evidence." *United States v. Douglas*, 489 F.3d 1117, 1129 (11th Cir. 2007). This is precisely what happened here; therefore, there can be no *Booker* violation in the undersigned's decision to enhance Graves' sentence based on facts (*i.e.*, the prior convictions) found at sentencing by a preponderance of the evidence. Second, even if the Court had applied the Guidelines in a mandatory fashion (which it did not), Graves' argument would still fail because *Booker* does not apply to prior convictions such as the career criminal enhancement at issue here. *See United States v. Orduno-Mireles*, 405 F.3d 960, 962 (11th Cir. 2005) ("the Court's holding in *Booker* ... is not implicated when a defendant's sentence is enhanced based on

---

[7] The Government urges the Court to reject petitioner's argument because *Booker*, *Blakely* and *Apprendi* cannot be applied retroactively to cases on collateral review. The retroactivity argument is misplaced here. *Booker* was decided on January 12, 2005. (Of course, *Blakely* and *Apprendi* were decided much earlier.) Graves was not sentenced in this case until 11 months later, on December 15, 2005. There is no retroactivity defense to this ground for relief, and the Court expressly rejects the Government's contention otherwise.

a prior conviction").[8]

This ground for relief fails as a matter of law.

### IV. Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Petitioner's Motion to Vacate (doc. 25) is **denied** with respect to the second (lack of communication by counsel) and third (career offender enhancement) grounds for relief asserted therein.

2. With respect to petitioner's first ground for relief (namely, that counsel rendered ineffective assistance by refusing his request that she file a notice of appeal on his behalf), Graves is **ordered**, on or before **November 30, 2007**, to file a written statement indicating whether, after consideration of the factors discussed on page 6 of this Order, he nevertheless desires an evidentiary hearing on the question of whether he asked Hillman to file a direct appeal on his behalf.

DONE and ORDERED this 30th day of October, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[8] Petitioner suggests that he might wish to posture this claim as one for ineffective assistance, as he objects that when he pleaded guilty his attorney never informed him that he would be subject to a three-point enhancement as a career criminal. (Doc. 25, at 5.) The two-part *Strickland* deficient performance and prejudice test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Smith v. Singletary*, 170 F.3d a1051, 1053 (11th Cir. 1999) (applying standard). Graves has made no showing that he would not have pleaded guilty had he been apprised of his exposure to the career criminal enhancement; therefore, to the extent that Graves would transform his third ground for relief into an ineffective assistance of counsel claim, such an argument is inadequate on its face.