IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 05-0233-WS |
| | ) | |
| FREDERICK D. GRAVES, | ) | CIVIL NO. 06-0178-WS-B |
| | ) | |
| Petitioner. | ) | |

**ORDER**

This matter is before the Court on petitioner Frederick D. Graves' Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 25) pursuant to 28 U.S.C. § 2255.

**I.     Background.**

On July 16, 2005, while in custody as a federal prisoner and awaiting designation to a federal correctional institution on another criminal case, petitioner Frederick D. Graves escaped from the Escambia County Detention Center in Brewton, Alabama, in violation of 18 U.S.C. § 751(a). He was recaptured within days in Prattville, Alabama. On December 15, 2005, following a plea of guilty, Graves was sentenced by this Court to a term of imprisonment of 37 months on the § 751(a) charge, such prison term to be served consecutively to a 172-month sentence imposed by Senior District Judge Butler in Criminal No. 05-00104 for possessing with intent to distribute approximately 70 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). At sentencing, the Court calculated Graves' guidelines range to be 37 to 46 months, using a base offense level (after a career offender enhancement) of 17, a three-level reduction for acceptance of responsibility, an adjusted offense level of 14, and a criminal history category of VI. Defendant received a low-end guidelines sentence.[1]

---

[1]    At sentencing, Graves did not argue that this guidelines calculation was erroneous in any respect. Prior to sentencing, however, his counsel filed a pleading styled "Evidence in Mitigation of Sentence," and appending an evaluation by Thomas H. Bennett, Ph.D. This evaluation indicated that Graves had begun using drugs (specifically methamphetamine and marijuana) at the Escambia County jail prior to his escape, that he had

Graves did not file a direct appeal from his conviction and sentence on the escape charge; however, he did file a § 2255 Motion collaterally attacking the judgment on March 24, 2006. The Motion identified three grounds for relief, to-wit: (1) a claim that his court-appointed lawyer refused his request that she file a direct appeal on his behalf, in violation of his Sixth Amendment right to effective assistance of counsel; (2) a claim of ineffective assistance of counsel alleging that his lawyer refused to go over the plea agreement with him or to visit with him or respond to his letters after he pleaded guilty; and (3) a claim that the career criminal enhancement imposed in this case violated the Sixth Amendment.

On October 30, 2007, the undersigned entered an Order (doc. 41) denying Graves' § 2255 Motion with respect to the second and third grounds. With respect to the first ground, the Court observed that the Eleventh Circuit hews to "the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se*." *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007) (citing *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005)); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). In addition to constituting constitutionally deficient performance, as a matter of law, it is clear that "to satisfy the prejudice prong of the *Strickland* test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." *Gomez-Diaz*, 433 F.3d at 792. The October 30 Order explained that disputes of fact precluded the Court from resolving this issue on the briefs. In particular, the

---

furnished information to authorities on drug transactions at the jail, and that other inmates had become aware of Graves' "snitching" on them. Dr. Bennett wrote that Graves had been given a hard time by both other inmates and his own mother for cooperating with authorities in this manner. Based on these circumstances, as well as other enumerated facts from Graves' background and personal circumstances, Dr. Bennett opined that "his escape was, to a great extent, a response to his own depression and agitation." (Doc. 20, at Exh. A.) Graves' lawyer argued this mitigation evidence at sentencing. (Doc. 36, at 4-8.) The Court accepted Dr. Bennett's opinions, but deemed them inadequate to justify imposition of a non-guidelines sentence in this case.

record included Graves' statement in his § 2255 Motion that he asked his attorney, Lyn Hillman, to file an appeal, but that she refused to do so. (*See* doc. 25, at 3-4.) But the record also included a detailed affidavit by Hillman in which she flatly denied that Graves had ever asked or instructed her to file an appeal. (*See* doc. 38, at Exh. A.) To resolve these factual disputes, the Court held an evidentiary hearing on April 4, 2008.[2] Pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings, counsel was appointed to represent Graves in connection with the hearing. Both Graves and Hillman testified live at the hearing, and the Court had a full opportunity to observe their demeanor and to make the necessary credibility determinations.

## II.    Analysis.

At the hearing, Hillman testified that during her 10-year stint as an Assistant Federal Defender in this District, her practice was to begin discussing appeals with her clients at the time of the negotiation of the plea agreement, with such discussions continuing during preparations for the sentencing hearing. Either at sentencing or shortly thereafter, Hillman testified, she would ask her clients whether they wanted to appeal and, if a client responded affirmatively and instructed her to file a notice of appeal, she would do so. Hillman testified that she would honor a client's request that she file a notice of appeal even if she believed there were no meritorious claims to present on appeal, and even if she disagreed with her client's decision. Hillman indicated that the notice of appeal is a short document that was very simple for her to create and

---

[2] In that regard, the Court concluded that it would be error to select between Graves' and Hillman's materially conflicting accounts of their discussions without holding a hearing. *See, e.g., Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (habeas petitioner is entitled to an evidentiary hearing if he alleges facts that, if proven, would entitle him to relief); *Gaston v. United States*, 2007 WL 1695762, *2 (11th Cir. June 13, 2007) (vacating district court order denying § 2255 relief and instructing district court to hold evidentiary hearing to determine whether petitioner had asked counsel to file a notice of appeal); *Bolton v. United States*, 2007 WL 906419, *2-3 (11th Cir. Mar. 27, 2007) (vacating district court denial of § 2255 petition where lower court credited counsel's affidavit over petitioner's, and explaining that on remand "the district court must conduct an evidentiary hearing to find the facts concerning the failure of trial counsel to file a notice of appeal, and based on those findings decide whether to grant the § 2255 motion"); *Rosero v. United States*, 2006 WL 2613661, *3-4 (11th Cir. Sept. 12, 2006) (remanding § 2255 action for district court to conduct evidentiary hearing into whether petitioner in fact requested counsel to file direct appeal, triggering *per se* duty to appeal under *Flores-Ortega*).

file.

With respect to Graves, Hillman testified that she adhered to her practice as outlined above.  Despite having represented hundreds of defendants in criminal matters, Hillman explained that she had a very specific recollection of her dealings with Graves because he was a high-maintenance client who contacted her numerous times via telephone and mail during these proceedings.[3]  Hillman testified that, even though she had successfully negotiated a significant 5K1 sentence reduction on Graves' behalf in the drug case before Judge Butler, Graves' communications with her in the escape case reflected his single-minded desire for a further reduction in his sentence in the drug case for continued cooperation, pursuant to Rule 35, Fed.R.Crim.P.  Hillman described Graves as being "fixated" on the Rule 35 issue.  Although she discussed appeal rights with him generally prior to sentencing in this case, Hillman testified, in their many communications Graves never expressed interest in appealing or raised any questions concerning possible appeals, but instead focused doggedly on his continued pursuit of Rule 35 relief.  Hillman's notes from the December 15, 2005 sentencing hearing reflect that Graves was notified of his appeal rights, and her testimony confirms that she went over Graves' appeal rights with him and consulted with him concerning the possibility of an appeal at that time.  According to Hillman, during their numerous communications following the sentencing hearing, Graves never requested that she file an appeal on his behalf; moreover, Hillman became aware of no circumstances prior to, during or after the sentencing hearing in this case that might reasonably warrant an appeal of his conviction and sentence.

Graves' testimony was markedly different than his former lawyer's.  According to Graves, immediately after the sentencing hearing Hillman asked him if he wished to appeal. When he responded affirmatively, Hillman said that she would meet with him at the jail the next week; however, she never did so.  Graves further testified that he spoke with Hillman several times after the sentencing hearing to follow up on his appeal request, and that she indicated that

---

[3]     A particularly memorable aspect of Hillman's representation of Graves was that he had mailed her marijuana from the Escambia County jail as proof of the illicit activities occurring there.  Hillman testified that this marked the first and only occasion on which a client had ever mailed her drugs.  Clearly, Graves was not a run-of-the-mill client, from Hillman's standpoint.

she was not really interested in appealing.  By Graves' own admission, he was aware that he had only 10 days after the December 15, 2005 sentencing hearing to file a notice of appeal, but he did not follow up with Hillman in writing until February 27, 2006.  This is so despite Graves' penchant for written communications with his attorney, as documented in the court file.

After carefully observing the demeanor and credibility of the witnesses, and reviewing all other relevant portions of the court file, the Court credits Hillman's account, and discredits Graves' version.  Several considerations inform this conclusion.  Most importantly, Hillman struck the Court as a more credible witness than Graves.  Her testimony was detailed, specific and consistent, both with regard to her general practice (born from 10 years of representing criminal defendants in this District) of always filing notices of appeal when requested by her clients, and also with regard to her specific interactions with Graves.  Given her testimony that the preparation of a notice of appeal is a simple, routine matter that she could complete in less than 10 minutes, and her practice of filing such notices whenever her clients requested them, it is not plausible that she would have refused to do so here had Graves made the request.

By contrast, Graves' account was lacking in several respects.  Given his demonstrated proclivity for firing off letters to his lawyer and the courts whenever he was dissatisfied with counsel's performance, and given his admission that he was aware of the 10-day deadline for filing a notice of appeal, his assertion that he instructed his lawyer to file an appeal then waited nearly two months before following up in writing with anybody is not believable.  Moreover, Graves' sworn testimony that he told Hillman that he wanted to appeal at the conclusion of the sentencing hearing is inconsistent with the letter he wrote to this Court on February 10, 2006, in which he intimated that he first asked Hillman to file a notice of appeal sometime after the sentencing hearing while they were discussing another matter.[4]  Additionally, the record (and specifically the correspondence between Graves and Hillman during the September-October time frame) amply supports Hillman's contention that Graves was entirely focused on securing a Rule

---

[4] That letter stated, in pertinent part, as follows: "On Dec 15, 2005 after sentencing Mrs. Hillman stated to me in your court that she would come the following week to talk with me to see if I wanted to appeal (she never did). ... Once I talked with her about another issue I asked to file an appeal on my behalf ...."  (Doc. 24, at Exh. 1.)  That account deviates materially from Graves' testimony on the witness stand at the evidentiary hearing.

35 reduction in the drug case during this time period.  Given that an appeal would in all probability slam the door on any further Rule 35 consideration by the Government, it is not plausible that Graves would have instructed his lawyer to jeopardize that already-tenuous Rule 35 effort by filing a notice of appeal.  And finally, the record reflects a dearth of any conceivable appellate issues in this case.  Graves never contested guilt and did not object to any aspect of the presentence report.  He received a low-end guidelines sentence.  The only grounds for appeal that Graves identified at the evidentiary hearing related to alleged ineffective assistance of counsel by Hillman in articulating the circumstances of his escape at sentencing.[5]  Of course, ineffective assistance claims generally are not presented on direct appeal where, as here, the record was not developed for the object of litigating or preserving such a claim.  *See, e.g., United States v. Le*, 256 F.3d 1229, 1241 (11th Cir. 2001) ("Claims of ineffective assistance of counsel generally are not considered for the first time on direct appeal unless the record is sufficiently developed."). Under all of the facts and circumstances presented here, it is not credible for Graves to maintain that he instructed his lawyer to file an appeal in this case when he can identify no basis whatsoever on which he wished to proceed on direct appeal, aside from certain ineffective assistance claims that could not have been raised on direct appeal and that he did not see fit to raise in his § 2255 petition.

In light of all of the foregoing, the Court makes a finding of fact, based on credibility determinations made during the evidentiary hearing, that Graves did not instruct or request that Hillman file a direct appeal in this case.  That finding does not end the Court's inquiry, however. "Where a defendant has not specifically instructed his attorney to file an appeal, we must still determine whether counsel in fact consulted with the defendant about an appeal." *Devine v. United States*, --- F.3d ----, 2008 WL 731748, *1 (11th Cir. Mar. 20, 2008) (quoting *Thompson*, 504 F.3d at 1206).  Counsel has a constitutional duty to consult with a defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant

---

[5] Notably, Graves omitted these ineffective assistance claims from his § 2255 motion, as well, suggesting that these are mere *post hoc* rationalizations, rather than legitimate concerns that Graves held at the time.

reasonably demonstrated to counsel that he was interested in appealing." *Devine*, 2008 WL 731748, at *1 (quoting *Flores-Ortega*, 528 U.S. at 480); *see also Thompson*, 504 F.3d at 1207. Neither of these circumstances are present here.  Nothing in the record before the Court suggests that there were any nonfrivolous grounds for appeal, or that any rational defendant might have wanted to appeal.  Furthermore, the Court specifically finds as a factual matter that Graves did not reasonably demonstrate to Hillman that he was interested in appealing.  As such, pursuant to *Flores-Ortega* and its progeny, Hillman was under no constitutional duty to consult with Graves about an appeal (that is, to advise him about the advantages and disadvantages of taking an appeal, and to make a reasonable effort to discover his wishes).  *See Flores-Ortega*, 528 U.S. at 480 ("We ... reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.").  The Court therefore need not consider the adequacy of the consultation that did occur in this case because even had Hillman not consulted with Graves at all about a possible appeal, her performance would not have been constitutionally deficient.

**III.   Conclusion.**

For all of the foregoing reasons, petitioner Frederick D. Graves' Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 25) is **denied**.  A separate judgment will enter.[6]

**DONE** and **ORDERED** this 18th day of April, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] The Court appointed counsel, Domingo Soto, to represent Graves in connection with the evidentiary hearing in this matter, pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings.  That evidentiary hearing having been concluded, and there being no circumstances that might warrant continued involvement of counsel in these proceedings, the appointment of Soto to represent Graves in this § 2255 action is **terminated**.